# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5880-17T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

W.F.,

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.R.,

      a Minor.

_____

Submitted January 21, 2020 – Decided February 11, 2020

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FG-13-0079-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender,

of counsel; James Daniel O'Kelly, Designated Counsel,
on the briefs).

Gurbir S. Grewal, Attorney General, attorney for
respondent (Melissa H. Raksa, Assistant Attorney
General, of counsel; Salima E. Burke, Deputy Attorney
General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian,
attorney for minor (Melissa R. Vance, Assistant Deputy
Public Defender, on the brief).

PER CURIAM

Defendant W.R. (Walt)[1] appeals from the Family Part's August 3, 2018 order terminating his parental rights to his daughter, A.R. (Ann), then just shy of five years old. As Ann's mother voluntarily surrendered her parental rights, the court's order freed Ann for adoption by her maternal grandmother, with whom she had lived for over two-and-a-half years.

Walt contends the Division of Child Protection and Permanency failed to establish prongs three and four of the best interests test. See N.J.S.A. 30:4C-15.1(a). He further contends the Division failed to comply with the notification requirements of the Indian Child Welfare Act (ICWA). See 25 U.S.C.A. §§

---

[1]  For the reader's convenience, we use pseudonyms for defendant and his daughter.

A-5880-17T3

1901-1963. The Law Guardian joins the Division in supporting the judgment. We affirm.

The Division presented its case through two caseworkers; an adoption caseworker; an adoption supervisor; the maternal grandmother; and Alan Lee, Ph.D., who conducted a psychological evaluation of Walt and a bonding evaluation of the grandmother and Ann. Walt did not testify or present witnesses.

Judge Terence P. Flynn reviewed the evidence at length in his opinion. The court noted Walt had a history of substance abuse and had been incarcerated or in halfway homes most of Ann's life. Ann was born in November 2013, and Walt relapsed five times between her birth and his last sentencing in October 2016. Two weeks before the termination hearing, Walt tested positive for marijuana. The court found he exerted minimal effort to create or maintain a parent-child relationship. Ann has been living with her maternal grandmother since February 2016. She has physical disabilities.[2] She cannot walk without

---

[2] The parties do not dispute that Ann has spina bifida. The trial court however did not consider the diagnosis because the Division failed to provide expert testimony. Nevertheless, the court considered the evidence that the grandmother and caseworkers offered as to Ann's needs and limitations.

A-5880-17T3

assistance or assistive devices; she is unable to control her bodily functions; and requires particularized attention and care.

After reviewing the evidence, the court found the Division proved, by clear and convincing evidence, all four prongs of the best interests test:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:40C-15.1(a).]

We defer to the trial court's factual findings and credibility determinations. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We review legal issues de novo. See Manalapan Realty, L.P. v. Twp.

Comm. of Manalapan, 140 N.J. 366, 378 (1995).   Applying this deferential standard of review, we affirm substantially for the reasons set forth in the trial court's comprehensive decision.

Regarding prong three, Walt contends the Division failed to provide him with adequate treatment programs while he was incarcerated and to arrange visitations as the court ordered.  The Division's efforts are "not measured by their success."  In re Guardianship of DMH, 161 N.J. 365, 393 (1999).  These efforts are "assessed against the standard of adequacy in light of all the circumstances of a given case."  Ibid.

The evidence demonstrates the Division provided adequate services to Walt.  For instance, the Division caseworker met with Walt twice in prison to keep him apprised of Ann's progress and performance.  Walt was provided with substance abuse evaluations, family team meetings, and services to assist Ann's special needs.  He participated in residential treatment programs for substance abuse, but did not make sincere and persistent efforts to complete them.  He relapsed five times, and twice disappeared without arranging to visit or communicate with Ann.  Though the Division could have done more to help Walt achieve his treatment goals, his failures are not attributable to the Division.

A-5880-17T3

Walt also challenges the court's prong three finding on the ground that the Division failed to arrange mandated visitation with Ann. We are unpersuaded. The evidence shows that Walt was incarcerated in three different jails and seven different halfway homes in less than three years. The Division had trouble arranging regular visits because Walt's address frequently changed, he had limited phone access or was in a blackout period, he did not want Ann to visit him in jail, and twice he did not inform the Division of his whereabouts. Walt also cancelled five out of the seven scheduled visits while he was not incarcerated. The absence of a parent-child relationship resulted from the unavailability and inconsistency in Walt's life, not from the Division's failure to arrange visitations.

In sum, we shall not disturb the trial court's finding that the Division met prong three of the best interests test.

We also discern no error in the trial court's finding that the Division met prong four. Walt insists, relying on N.J. Div. of Youth and Family Servs. v. A.R., 405 N.J. Super. 418 (App. Div. 2009), that the court never ordered a formal bonding evaluation with him. In A.R., we stated that "we can envision very few scenarios in which comparative evaluations would not be required." Id. at 440. Nevertheless, there may be exceptional cases, like this one.

Comparative evaluations are "significan[t] in evaluating the comparative harm under the fourth prong." Ibid. However, the record evidence enabled the court to make its prong four finding without one.

The reports of Walt's visitation with Ann do not indicate such a strong bond that termination would cause Ann significant harm. We do not question Walt's expressions of love for his daughter. However, the reports do not indicate that Ann expressed great enthusiasm at the beginning of visits or great displeasure or upset when she was separated from her father at the end of visits. That suggests there was not a strong bond between father and daughter.

Aside from providing names of relatives who were either unable or unfit to care for the children, Walt's only plan concerning Ann was to allow Ann's maternal grandmother to care for her until he could "prove" himself and stay sober. This plan proved unrealistic due to his pattern of violating parole and returning to incarceration. Walt's efforts to establish a relationship with Ann fell short. He had the opportunity to visit Ann when he was out of jail, but he visited her only two times. As a result of his own choices, Walt had no meaningful relationship with Ann.

Dr. Lee testified Ann formed a significant and positive bond with her maternal grandmother, who was willing to adopt her. He also opined Ann would

suffer severe and enduring harm if she were removed from her grandmother's care and, that if this bond were broken, Walt would not be able to remedy the harm. Dr. Lee found that Walt's parenting and child-rearing knowledge was limited. Dr. Lee advised against Walt serving as an independent caretaker for the foreseeable future. Considering this evidence, the trial court did not err in declining to order a bonding evaluation of Walt.

Finally, we reject Walt's argument that the Division violated federal law that required it to notify his tribes of the termination of parental rights case.

Whether a child is considered "Indian" under the ICWA is a determination for the child's potential tribe. See N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 369 (App. Div. 2015). If a court knows or has reason to believe that the child whose parent's rights are sought to be terminated might be Indian, then the court must order the party seeking to terminate the parent's rights to provide notice to the child's tribe of the pending proceedings and of its right to intervene. 25 U.S.C.A. § 1912(a). Such notice must be given by certified mail with the return receipt requested. 25 C.F.R. § 23.11(a). No parental rights proceedings may be held until at least 10 days after the tribe has received notice. 25 U.S.C.A. § 1912(a).

A-5880-17T3

The record shows that the Division did comply with the ICWA. On January 24, 2019, we entered an order staying the termination proceedings to allow the Division to send the notices required under the ICWA. On March 28, the Division sent notices to the Blackfeet Tribe, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, the Cherokee Nation, and the directors of the Eastern, Eastern Oklahoma, and Rocky Mountain regions of the Bureau of Indian Affairs. Three tribes responded that Ann was not a tribe member, and they would not intervene. The remaining tribes did not respond, but the Division provided to the trial court copies of the certified mailings to show those tribes had received the notice.

The trial proceedings commenced on June 7 – more than two months later – clearly after the 10-day period the ICWA required. Accordingly, the Division complied with the ICWA notification requirements.

In closing, we do not doubt that Walt loves his daughter and honestly believes that with time, he would be ready to care for her. However, the record clearly supports Judge Flynn's determination that Walt is unable to provide Ann a safe, stable, and permanent home, he lacks the skills to serve as Ann's parent, and that will not change in the foreseeable future. A child cannot afford to wait, and should not be required to wait, until such time as her parent might possibly

be able to provide a safe, secure, and nurturing environment for her. Judge Flynn properly concluded that the four prongs of the best interests test were satisfied, and termination of parental rights will not do more harm than good. It will free Ann for adoption by her grandmother, who has served as her psychological parent for more than half of her life and who can provide her permanency, stability, and love.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5880-17T3